UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

YENALVIS PEÑA,  :
      Plaintiff,  :
          :
    v.  :  No. 5:23-cv-3117
          :
UNITED STATES OF AMERICA,  :
      Defendant.  :
_____

**O P I N I O N**
**Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 31 – Denied as Moot**
**Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 33 –Granted in Part, Denied in Part**

**Joseph F. Leeson, Jr.**                                                          **December 19, 2024**
**United States District Judge**

### I.    INTRODUCTION

Plaintiff Yenalvis Peña brings this action against Defendant United States of America under the Federal Tort Claims Act (FTCA), *see* 28 U.S.C. § 1346(b), claiming false arrest/imprisonment and malicious prosecution after a U.S. Immigration and Customs Enforcement (ICE) employee allegedly misrepresented Peña's immigration status to Berks County police, leading to the issuance of a state warrant on which Peña was later arrested. The Government moves to dismiss Peña's claims for lack of subject matter jurisdiction, and in the alternative, moves for summary judgment. This Court finds that Peña's claims are barred by the misrepresentation exception to the FTCA, and grants the Motion to Dismiss, with prejudice. The Motion for Summary Judgment is denied as moot.

## II. BACKGROUND

### A. Factual Background[1]

#### i. Peña's Resident Status

Yenalvis Peña arrived in the United States from the Dominican Republic with his family as a teenager and was granted "permanent resident" status by issuance of a green card on February 11, 2017. *See* Defendant's Statement of Undisputed Material Facts ("DSOF"),[2] ECF No. 33-1, ¶ 1; Amended Complaint ("Am. Compl."), ECF No. 16, ¶ 15. Peña's green card expired on February 11, 2019. *See* DSOF at ¶ 3. Pursuant to 8 C.F.R. § 216.4(a)(1)-(6),[3] in the ninety days preceding this date—from November 13, 2018, to February 10, 2019,—Peña was required to file his Petition to Remove Conditions on Residence (his "I-751" form) to become a permanent resident past the date of the card's expiration.[4] *Id.* at ¶¶ 3-4. Peña filed his I-751 form with United States Citizenship & Immigration Services ("USCIS") past the expiration date of his conditional permanent resident status; USCIS received the form on March 4, 2019, and sent Peña a "Notice of Receipt" on May 15,

---

[1] Since the Government has levied a factual attack to subject matter jurisdiction under Rule 12(b)(1), the Court considers matters outside the pleadings, including the exhibits referenced by both parties. *See LaLoup v. United States*, 92 F. Supp. 3d 340, 344 (E.D. Pa. 2015).

[2] Any citation to Defendant's Statement of Undisputed Material Facts, (Defendant's Statement of Facts, or "DSOF") ECF No. 33-1, is also a reference to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Plaintiff's Statement of Facts, or "PSOF"), ECF No. 39-3, at the same paragraph number, insofar as Plaintiff's Response is "Admitted." If there is a fact to which Plaintiff does not fully admit, the portion denied by Plaintiff will be distinguished and the paragraph cited to only for the portion to which Plaintiff admits.

[3] "Failure to properly file Form I–751 within the 90–day period immediately preceding the second anniversary of the date on which the alien obtained lawful permanent residence on a conditional basis shall result in the automatic termination of the alien's permanent residence status and the initiation of proceedings to remove the alien from the United States." 8 C.F.R. § 216.4(a)(6).

[4] Peña does not dispute that the Government correctly stated part of the rule re: filing I-751 forms but highlights that the Government neglected to mention the statute's exception for failing to timely file an I-751: 8 C.F.R. § 216.4(a) allows "[f]orm I–751 [to] be filed after the expiration of the 90–day period only if the alien establishes to the satisfaction of the director, in writing, that there was good cause for the failure to file Form I–751 within the required time period." 8 C.F.R. § 216.4(a)(6). *See* PSOF at ¶ 3.

2019. *Id.* at ¶¶ 5-6, 8. The Notice of Receipt stated that "the extension [of conditional resident status] and authorization for employment and travel" granted by a timely-filed I-751 form "does not apply to you if your conditional resident status has been terminated." *Id.* at ¶ 9. The late filing of the I-751 form had the effect of terminating Peña's permanent resident status unless Peña "establishe[d] to the satisfaction of the director, in writing, that there was good cause for the failure to file Form I–751 within the required time period." 8 C.F.R. § 216.4(a)(6). *See also* DSOF ¶¶ 7, 10 (citing to termination rule in 8 C.F.R. § 216.4(a)(6)).

### ii. The Brady Query

On June 4, 2020, Peña attempted to purchase a firearm from a gun shop in Berks County Pennsylvania. DSOF ¶ 11. In conjunction with his purchase, Peña was required to fill out an application to establish that he qualifies to legally purchase a firearm in the state. Am. Compl. ¶ 20(c). Peña filled out and submitted the requisite application, which the gun shop then sent to the Pennsylvania State Police in Berks County, who in turn sent the application to the United States Department of Homeland Security (DHS) to have the U.S. Immigration and Customs Enforcement (ICE) agency check the applicant's immigration status. *Id.* at ¶ 20(d)-(e). This request for information from ICE, also known as a "Brady query,"[5] was initiated by the Pennsylvania State Police on June 4, 2020. DSOF ¶¶ 12-14. ICE's Law Enforcement Support Center ("LESC") employee Myriam Ramierez-Bilodeau, working in her role as a Law Enforcement Specialist,[6] responded to the query and searched the LESC database to find the dates of Peña's conditional residence and the date Peña filed his I-751. *See id.* at ¶¶ 15-18.

---

[5]   A Brady query is initiated when any non-U.S. citizen seeks to purchase a firearm. *See* DSOF ¶ 13.
[6]   *See* Motion to Dismiss, ECF No. 33, 12 and Exhibit G ("Law Enforcement Specialist" job description, USAJOBS), ECF No. 33-8; Response Brief, ECF No. 39-1, 6.

As part of a standard operating procedure for Brady requests, Ramierez-Bilodeau referred to a set of Brady Query "Go-By" instructions, one of which reads "[i]f the l-751 . . . was filed after the conditional resident card expired, the subject is out of status; Use the Undocumented response." *Id.* at ¶¶ 16, 19. In response to these instructions, Agent Ramierez-Bilodeau entered the codes for "illegal" or "undocumented" status, due to Peña's late filing of the I-751 form.[7] *See id.* at ¶ 20. ICE's response to the Brady query stated: "I.C.E. records indicate that this subject is not legally in the United States and appears to be subject to removal proceedings."[8] *Id.* at ¶ 21. ICE's response on June 4, 2020, was the last communication between the Pennsylvania state police and LESC with respect to Peña until after his later arrest in 2021. *Id.* at ¶ 22.

### iii. Peña's Arrest

On January 27, 2021, without ICE's knowledge, Berks County filed a criminal complaint accusing Peña of violating 18 Pa.C.S. § 6111(g)(4)(ii) and 18 Pa.C.S. § 4904 by falsely indicating his legal resident status on the application to purchase a firearm. *Id.* at ¶ 23. A warrant was issued for Peña's arrest on January 28, 2021. *Id.* at ¶ 24. Unaware of this, Peña flew to the Dominican Republic for a family visit on February 4, 2021, where he remained for six months. *Id.* at ¶¶ 25-26. While Peña was outside the United States, USCIS granted his petition for permanent legal status on July 29, 2021. *Id.* at ¶ 26. Peña returned to the United States on August 21, 2021, where he was arrested by the Newark Airport Police Department based upon the outstanding arrest warrant from Berks County.[9] *Id.* at ¶ 27. On August 26, 2021, Peña had a hearing before the Superior Court of

---

[7] Peña does not dispute whether Ramierez-Bilodeau entered the codes as stated; he admits that Ramierez-Bilodeau entered the codes for "illegal" or "undocumented" status due to his late filing of the I-751 form but believes that the codes were incorrect and should not have been communicated as such. *See* PSOF at ¶ 20.
[8] Again, Peña does not dispute *what* was communicated in the response, but believes the content of the response to be false. *See* PSOF at ¶ 21.
[9] Peña does not dispute that this ocurred or that the Newark Airport Police acted in reliance on the Berks County warrant, but believes that the warrant was issued based on false information received from ICE. *See* PSOF at ¶ 27.

New Jersey, Essex County, where he waived extradition by signing a Consent Order. Am. Compl. ¶ 23. On August 30, 2021, Berks County contacted the LESC, requesting that the LESC check Peña's immigration status because Peña's lawyer indicated that he was then a legal resident. DSOF ¶ 29. LESC employee Joseph Mitchell responded to the request, and in reviewing the LESC database, discovered that Peña's I-751 form had recently been approved on July 29, 2021.[10] *Id.* at ¶ 31. Mitchell updated the prior Brady query response from June 4, 2020, to reflect the following immigration status: "I.C.E records indicate that this subject is legally residing in the United States as a permanent resident and may live and work in the U.S." *Id.* at ¶ 32. Berks County then sent another Brady query on September 2, 2021, to which the LESC responded that Peña was legally residing in the United States. *Id.* at ¶ 32. On September 3, 2021, Peña was transferred from the Essex County Jail in Newark, New Jersey, to the Berks County Jail in Leesport, Pennsylvania, and was released from custody. Am. Compl. ¶ 24; *see* DSOF ¶ 34. In the coming days, all of the criminal charges against Peña under Pennsylvania criminal docket number MJ-23303-CR-0000026-2021 were dismissed. Am. Compl. at ¶ 25.

## B. Procedural Background

Peña initiated this action on August 14, 2023, against the United States of America (more narrowly, U.S. Immigration and Customs Enforcement (ICE)). *See* Complaint, ECF No. 1. Peña filed an Amended Complaint on March 14, 2024, asserting claims of false arrest/imprisonment and malicious prosecution. *See* Am. Compl. On October 15, 2024, the Government filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. *See* Motion to Dismiss or for Summary Judgment, ECF No. 31. The next day, the Government filed an amended Motion to

---

[10] Peña does not appear to dispute these facts but disputes that the approval of his I-751 form on July 29, 2021 had the effect of *re-instating* his legal resident status, which he believes was never terminated by his late filing of the I-751 form because 8 C.F.R § 216.4(a)(6) allows petitioners to state good cause for late filing. *See* PSOF at ¶ 31.

Dismiss arguing that this Court lacks subject matter jurisdiction over Peña's claims because they are subject to the misrepresentation exception of the FTCA and are thereby barred by sovereign immunity. *See* Motion, ECF No. 33.[11] In the alternative, the Government seeks summary judgment, arguing that the claims fail as a matter of law. *See id.* Peña responded on November 4, 2024, arguing that the Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied because his claims are based on a separate duty of the Government and that, notwithstanding, his claims fall within the law enforcement proviso's waiver of sovereign immunity. Since the Court finds that it lacks subject matter over the claims, it grants the Motion to Dismiss and dismisses the Motion for Summary Judgment as moot.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction – Review of Applicable Law

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3). A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual

---

[11] Since the Government filed an Amended Motion which the Court now grants, it dismisses the earlier Motion as moot.

attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise present[s] competing facts," *Aichele*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[12] *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

### B. The Federal Tort Claims Act – Review of Applicable Law

The Federal Tort Claims Act ("FTCA")[13] "allows a plaintiff to bring certain state-law tort suits against the Federal Government" by "waiving sovereign immunity so parties can sue the United States directly for harms caused by its employees." *Brownback v. King*, 592 U.S. 209, 212 (2021). Under the FTCA, "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any [Government] employee" while "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

---

[12] While this is the general rule for factual challenges, the instant matter is different. Here, the Court assigns the burden of proving the applicability of the misrepresentation exception to Defendants. In *S.R.P. ex rel. Abunabba v. United States*, the Third Circuit made it clear that the government bears the burden of proving the applicability of the discretionary function exception found within the same statute at § 2680(a). *See* 676 F.3d 329 (3d Cir. 2012). In doing so, the Third Circuit likened the exception to an affirmative defense and reasoned that "a plaintiff cannot not be expected to disprove every exception to the FTCA" and that "the Government will generally be in the best position to prove facts relevant to the applicability" of the exception. *Id.* at 333 n.2. The Court finds that reasoning applies equally to the misrepresentation exception. Thus, it is the government's burden to show both that the misrepresentation exception applies and the law enforcement proviso does not.

[13] *See* 28 U.S.C. §§ 1346, 2671–2680.

### i. The "Misrepresentation" Exception – Review of Applicable Law

Section 2680, otherwise regarded as the intentional tort exception, excepts several torts from FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(h). Among them is any claim arising out of a misrepresentation: "The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights." *Id.* (emphasis added). Notably, because the claim need only "aris[e] out of . . . misrepresentation," it is the substance and not the form of the claim which determines whether the exception applies. *See Nicklas v. United States*, No. 13-CV-1122, 2014 WL 309323 at * 3 (W.D. Pa. Jan. 27, 2014); *see also Brunwasser v. United States*, No. 07-CV-00385, 2008 WL 728546, at *5 (W.D. Pa. Mar. 17, 2008) (quoting *JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1264 (11th Cir.2000) ("[w]hile the Court recognizes that Plaintiff has never specifically alleged the tort of negligent misrepresentation, '[i]t is the substance of the claim and not the language used in stating it which controls' whether the claim is barred by an FTCA exception.'").

The Supreme Court, in *United States v. Neustadt*, "determined initially that § 2680(h) applies to claims arising out of negligent, as well as intentional, misrepresentation." *Block v. Neal*, 460 U.S. 289, 295 (1983) (referencing *Neustadt*, 366 U.S. 696, 703–706 (1961)). Then in *Block v. Neal*, the Supreme Court "limited the applicability of *Neustadt* by concluding that 28 U.S.C. § 2680(h) (1976) barred an action for recovery under the FTCA only when a party alleged no injury that he would have suffered independently of his reliance on a misrepresentation or an omission.'" *JM Mechanical Corp. v. U.S. by U.S. Dept. of Housing and Urban Dev.*, 716 F.2d 190, 194 (3d Cir. 1983) (summarizing the Neustadt-Neal Rule, as it now exists after *Neal*). In other words, for the misrepresentation exception to apply and bar a claim brought under the FTCA, the alleged misrepresentation by the Government defendant must be *essential* to the plaintiff's claim, because

"where recovery is sought on the basis of a breach of a governmental duty to perform certain acts, and not on the basis of misstatements or communications made or not made by the government, section 2680(h) may not be invoked to bar the action." *Id.* at 194 (finding that misrepresentation defense under 28 U.S.C. § 2680(h) was foreclosed because, absent any misrepresentation, plaintiff could nonetheless assert another valid tort claim arising from the same transaction or occurrence). *See also Cross Bros. Meat Packers, Inc. v. United States*, 705 F.2d 682, 684 (3d Cir. 1983) (finding that the misrepresentation defense was foreclosed because the complaint alleged facts sounding more in negligent supervision than in misrepresentation).

## ii. The Law Enforcement Proviso – Review of Applicable Law

Immediately following the misrepresentation exception in the text of the statute, however, is the "law enforcement proviso" of the FTCA. Also codified at 28 U.S.C. § 2680(h), the law enforcement proviso acts as a "second-level exception," *Vanderklok v. United States*, 868 F.3d 189, 202 (3d Cir. 2017), which "extends the waiver of sovereign immunity to claims for six intentional torts" out of the eleven listed in Section 2680(h), *Millbrook v. United States*, 569 U.S. 50, 52–53 (2013), when committed by an "investigative or law enforcement officer" of the United States Government, *see* 28 U.S.C. § 2680(h). Specifically, the proviso extends to claims "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" when committed by an "investigative or law enforcement officer." 28 U.S.C. § 2680(h). For the purpose of subsection (h), "'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

## IV. DISCUSSION

The Court grants the Motion to Dismiss for Lack of Subject Matter Jurisdiction because Peña's claim is barred by the misrepresentation exception of the FTCA

> A. **The misrepresentation exception applies because the alleged misrepresentation is essential to Peña's claims.**

For the misrepresentation exception to apply, the alleged misrepresentation by the Government must be essential to Peña's claims. *See Neal*, 460 U.S. at 297. An action is barred from recovery under the FTCA when a party alleges no injury "that he would have suffered independently of his reliance on a misrepresentation or an omission." *JM Mech. Corp.*, 716 F.2d at 194. Alternatively, "where recovery is sought on the basis of a breach of a governmental duty to perform certain acts, and not on the basis of misstatements or communications made or not made by the government, section 2680(h) may not be invoked to bar the action." *Id.*

Peña alleges claims of false arrest/imprisonment and malicious prosecution because of his arrest and detention by Newark Airport police in August of 2021. The substance of these claims is an alleged misrepresentation by an ICE employee in response to a Brady query on June 4, 2020, which was then relied upon by Berks County police when issuing a warrant for Peña's arrest on January 28, 2021—the very same warrant on which he was arrested eight months later in Newark. Peña makes clear in his pleadings that the thrust of his argument is based on ICE's misrepresentation to state police, without which Peña believes he never would have been arrested or detained. *See* Am. Compl. ¶ 10 ("All of Plaintiff's FTCA claims arise under the Fourth Amendment of the United States Constitution and state claims for the violation of the Fourth Amendment for the illegal arrest, imprisonment and prosecution of the Plaintiff based on fabricated evidence and/or providing false evidence/information."); *id.* at ¶ 22 ("Peña's false arrest and imprisonment was initiated/caused by Defendant's law enforcement agents negligently, recklessly, intentionally, maliciously providing fabricated/false evidence/information to Detective Taimanglo of the Central Berks Regional Police Department regarding Plaintiff's immigration status."); PSOF at ¶ 27 ("Plaintiff was arrested based on the warrant issued by Central Berks Regional Police Department, which was issued as a result of the false information provided by ICE and Defendant."); Response

Brief, ECF No. 39-1 at 5 ("The instant action is based on ICE breaching its duty to Plaintiff when relaying false information about his immigration status to the Central Berks Regional Police Department, causing Plaintiff's false arrest and malicious prosecution."). This Court, therefore, has no difficulty finding that this alleged misrepresentation is essential to Peña's false arrrest/imprisonment and malicious prosecution claims; the claims themselves are dependent on the allegations of either negligent or intentional misrepresentation by the Government regarding Peña's immigration status. Such claims cannot proceed under the FTCA since Peña alleged no injury that he would have suffered independently of the state police's reliance on this alleged misrepresentation.[14] *See JM Mech. Corp.*, 716 F.2d at 194.

---

[14]   In cases where misrepresentation is not pled as a separate cause of action, the Third Circuit has not yet spoken to whether, for the sole purpose of determining if the misrepresentation exception applies, it must be alleged that the plaintiff himself relied on the alleged misrepresentation rather than suffered harm as the result of another's reliance. *See, e.g., Cross Bros. Meat Packers v. United States*, 705 F.2d 682, 684 (3d Cir. 1983) ("[T]he essence of an action for misrepresentation . . . is the communication of misinformation on which the *recipient* relies.") (emphasis added) (quoting *Block v. Neal*, 460 U.S. 289, 296 (1983)). Other circuits have addressed it, however:
> Insofar as "misrepresentation" is viewed as a separate, independent tort, it involves activity different from that at issue here . . . . While the Restatement indicates that the tort of misrepresentation involves the dissemination of information generally and not only in commercial contexts, it makes clear that one essential element of misrepresentation remains reliance by the plaintiff himself upon the false information that has been provided.

*Jimenez-Nieves v. United States*, 682 F.2d 1 at *4 (1st Cir. 1982) (finding that the misrepresentation exception did not apply where the misrepresentation was not made to plaintiff and plaintiff did not rely upon it himself). *See also Crow v. U.S.*, 634 F. Supp. 1085 (D. Kan. 1986) (same).

Still, this is not determinative of this Court's decision. Our Court has before suggested that where an independent claim for negligent representation is pled, it must be alleged that the plaintiff "would not have suffered any injury independent *of his or her reliance* on the communication of misinformation." *Moyer Packing Co. v. United States*, 567 F. Supp. 2d 737, 758 (E.D. Pa. 2008) (emphasis added) (internal quotations omitted). Where a different tort claim is pled under the FTCA (the root cause of which *derives* from an alleged misrepresentation), our sister districts indicate that the pertinent inquiry is the "nature of the conduct upon which the tort claim is based" and whether the alleged misstatement is "essential" to the claim; "[t]he label of 'misrepresentation,' accordingly, is irrelevant." *See Nicklas v. United States*, No. 13-CV-1122, 2014 WL 309323, at *3 (W.D. Pa. Jan. 27, 2014) (finding that the misrepresentation exception did apply where an IIED claim was founded upon misstatements, and the effect on plaintiff—in this case, the effect of her clearly proven reliance on those statements—was essential to the claim).

In his Response, Peña turns course and argues that his claims are not based on an alleged misrepresentation but a separate duty: that ICE had a "duty to Plaintiff" to relay accurate information about Plaintiff's immigration status to the Central Berks Regional Police Department. Response Brief at 5. The Court sees little (if any) distinction as this basis of liability relies on "ICE breaching its duty to Plaintiff when *relaying false information about his immigration status* to the Central Berks Regional Police Department, causing Plaintiff's false arrest and malicious prosecution." *Id.* Thus, Peña's breach-of-duty theory is *still* based on an alleged misrepresentation by the Government, without which there would be no warrant, and ultimately no arrest. Accordingly, Peña's claims are barred under the misrepresentation exception to the FTCA. *See Evergreen Marine, Ltd v. United States*, 789 F. App'x 798, 802 (11th Cir. 2019) (citing *JBP Acquisitions*, 224 F.3d at 1265 (misrepresentation exception applied where the plaintiff "would have suffered no injury" "[w]ithout the false representation by the [g]overnment that it was the owner of the Property")).

B.  **The law enforcement proviso does not apply to misrepresentations.**

Notwithstanding, Peña argues that even if the misrepresentation exception applies, the law enforcement proviso acts to shield his claims from dismissal because "Agent Ramierez-Bilodeau is an investigative or law enforcement officer for purposes of 28 U.S.C. § 2680(h)." Response Brief at 9. This Court disagrees. Under the proviso, when an intentional tort is committed by an "investigative or law enforcement officer" the Government's waiver of sovereign immunity extends only for six of the eleven intentional torts listed in Section 2680(h): assault, battery, false

---

Here, Peña does not assert negligent or intentional misrepresentation as an independent cause of action, and so did not allege in his pleadings that *he* justifiably relied on the alleged misrepresentation which forms the basis for his tort claims. His Amended Complaint does allege, however, a basis of Government liability rooted in an alleged misrepresentation by ICE, reliance on which is essential to Peña's claims of false arrest/imprisonment and malicious prosecution.

imprisonment, false arrest, abuse of process, and malicious prosecution.[15] *See Millbrook*, 569 U.S. at 52–53. Misrepresentation is not one of these. *See id.* Since the Court has already found that Peña's claims "arise out of" a misrepresentation, *see* Section IV(A), *supra*, the misrepresentation exception under Section 2680(h) steadfastly applies to bar the claims without further exception. The law enforcement proviso does not apply.[16]

---

[15] The limited application of the law enforcement proviso to only six of the eleven intentional torts mentioned in § 2680(h) was intentional. "In 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "The Senate Committee report states that the proviso was added to the FTCA in response to 'abusive, illegal, and unconstitutional "no-knock" raids' engaged in by federal narcotics agents in the Collinsville raids and in *Bivens*." *See Campos v. United States*, 888 F.3d 724, 736 (5th Cir. 2018) (referencing *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Investigation*, 403 U.S. 388 (1971)). Thus, the proviso was intended to only "appl[y] in situations in which the kinds of egregious, intentional misconduct occurs that was present in the events that prompted Congress to adopt the proviso." *Id.*

[16] Notwithstanding, the proviso does not apply, because Agent Ramierez-Bilodeau is not an "investigative or law enforcement officer" under the statute. 28 U.S.C. § 2680(h).

The proviso defines "investigative or law enforcement officer" as any officer of the United States who is "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Generally speaking, ICE agents may be considered "investigative or law enforcement officers," but only if authorized by statute to conduct searches, seizures, and arrests according to their role. *See* 8 U.S.C. 1357(a). The "[p]owers of immigration officers and employees" as defined in Title 8 of the United States Code, Section 1357(a), include the power "to arrest any alien . . . attempting to enter the United States in violation of any law," "to board and search" any vessel for aliens, "to make arrests . . . for any offense against the United States," and "to conduct a search, without warrant," but only insofar as that "officer or employee of the Service [is] authorized under regulations prescribed by the Attorney General." *Id.* The positions authorized to conduct arrests, searches, and seizures are listed in the DHS Immigration Regulations Subchapter, 8 C.F.R. § 287.1 *et seq.*, which outlines the "Powers and Duties" of "Field Officers." Under 8 C.F.R. § 287.8, "Only designated immigration officers are authorized to make an arrest. The list of designated immigration officers may vary depending on the type of arrest as listed in § 287.5(c)(1) through (c)(5)." Only the following immigration officers, after completing basic immigration law enforcement training, are designated to exercise the arrest power or to conduct searches:

> (i) Border patrol agents; (ii) Air and marine agents; (iii) Special agents; (iv) Deportation officers; (v) CBP officers; (vi) Immigration enforcement agents; (vii) Supervisory and managerial personnel[;] and (viii) Immigration officers who need the authority to arrest aliens under section 287(a)(2) of the Act in order to effectively accomplish their individual missions and who are designated . . . .

8 C.F.R. § 287.5(c),(d).

## V. CONCLUSION

This Court lacks subject matter jurisdiction over this action because all claims are based on an alleged misrepresentation by a government employee, thereby barring Peña's claims under the misrepresentation exception to the Federal Tort Claims Act, to which the law enforcement proviso does not apply. This Court grants the Government's Motion to Dismiss for lack of subject matter jurisdiction. This dismissal is with prejudice and the Motion for Summary Judgment is denied as moot.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

Here, Agent Ramierez-Bilodeau works as a "Law Enforcement Specialist" for ICE. *See* Motion at Exhibit J (Ramierez-Bilodeau Depo. Transcript), ECF No. 33-11, 20. The duties of a Law Enforcement Specialist include collecting and analyzing information, conducting research projects, and preparing written reports; this position "is NOT a Law Enforcement Officer (LEO), or law enforcement retirement covered position." *See* Motion at Ex. G. Ramierez-Bilodeau's job responsibilities are limited to administrative tasks that can be accomplished while teleworking, namely responding to immigration queries by searching a database and then updating the corresponding alien's file. *See* Motion at 1; *id.* at Ex. G; *id.* at Ex. J, 33, 54. Ramierez-Bilodeau is not a "field officer" as detailed by DHS Immigration Regulations. *See* 8 C.F.R. § 287.1 *et seq.* Her job title, "Law Enforcement Specialist" does not appear anywhere in the subchapter, let alone in the statute authorizing certain officers to conduct searches and arrests, 8 C.F.R. § 287.5(c),(d). Ramierez-Bilodeau is therefore not "authorized under regulations prescribed by the Attorney General" to make arrests, conduct warrantless searches, or board and search vessels for aliens. 8 U.S.C. § 1357. Accordingly, she is not "empowered by law to execute searches, to seize evidence, or to make arrests" such that she would be considered an "investigative or law enforcement officer" under 28 U.S.C. § 2680(h).